IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br><br>CHARLES PHILIP COWIN,<br><br>Debtor. | § § § § § § § | Case No. 10-34132<br><br>Chapter 11 |
| COUNTRYWIDE HOME LOANS, INC., and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp, Mortgage Pass-Through Certificates, Series 2006-4,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES PHILIP COWIN,<br><br>Defendant. | § § § § § § § § § § § § § § § § | Adversary No. _____ |

## PLAINTIFFS' ORIGINAL ADVERSARY COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Countrywide Home Loans, Inc. ("Countrywide") and Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement Relating to IMPAC Secured Assets Corp, Mortgage Pass-Through Certificates, Series 2006-4 ("Deutsche Bank") (collectively "Plaintiffs") for judgment against and to determine the non-dischargeability of debt pursuant to 11 U.S.C. §523(a)(2)(A) and (4). In

support thereof, Plaintiffs respectfully show this Court the following:

I.

Introduction

1. This suit involves the scheme to defraud Plaintiffs of their pre-existing security interest in the property located at 3311 Yupon Street, Unit 307, Houston, Texas 77006 (the "Property"). The basic framework of the scheme involved Sections 32.06 and 32.065 of the Texas Tax Code (collectively the "Transfer Tax Lien Statutes"). Pursuant to the Transfer Tax Lien Statutes, a person who, with the consent of a property owner, pays the *ad valorem* taxes assessed against the property owner's real property, is entitled to a transfer of the taxing unit's lien against the real property in the amount satisfied. This "transferred" tax lien has the same priority as when held by the taxing unit, meaning that it is superior to all pre-existing mortgage liens.

2. The fraudulent scheme involving the Transfer Tax Lien Statutes was carried out substantially as follows: (1) one party purchases the Property at a foreclosure sale of a condominium association's assessment lien; (2) that party then enters into a sham agreement with a second party for the second party to pay the *ad valorem* taxes assessed against the Property in exchange for a transfer tax lien against the Property; (3) the intentional default by the first party of his obligations to repay the loan resulting in the foreclosure of the transfer tax lien and sale of the Property; and (4) the first and second party absconding with the proceeds from the foreclosure sale. The effect of this scheme is to deprive any pre-existing lienholder's of their interest in the Property *and* the proceeds of the sale.

3. Plaintiffs contend that Cowin participated in this scheme and is jointly and

severally liable for the damages incurred by Plaintiffs, in an amount to be determined, and that Cowin's liability is not and should not be dischargeable under 11 U.S.C. §523(a)(2)(A) and (4).

## II.

## Jurisdiction and Venue

4.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §157 and 1334 and 11 U.S.C. §523. This is an adversary proceeding pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure and a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(I) and (O).

5.     Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

## III.

## Parties

6.     Countrywide is a corporation formed under the laws of the State of New York and has its principal office in the State of California. Countrywide hereby makes an appearance in this case for all purposes and may be served through its counsel of record, Michael J. McKleroy, Jr., MARIS & LANIER, P.C., 1310 Premier Place, 5910 N. Central Expressway, Dallas, Texas 75206, in accordance with the Federal Rules of Bankruptcy Procedure.

7.     Deutsche Bank is a national banking association formed under the laws of the United States and has its principal office in the State of California. Deutsche Bank hereby makes an appearance in this case for all purposes and may be served through its counsel of record, Michael J. McKleroy, Jr., MARIS & LANIER, P.C., 1310 Premier Place, 5910 N. Central Expressway, Dallas, Texas 75206, in accordance with the Federal Rules of Bankruptcy

Procedure.

8. Cowin is a natural person residing in Harris County, Texas. Cowin may be served at 1901 Post Oak Boulevard, Suite 604, Houston, Texas or wherever he may be found. Cowin is the debtor in the above-styled and -numbered bankruptcy case.

IV.

Statement of Relevant Facts

**A. Transfer Tax Liens.**

9. On January 1 of each year, a tax lien, in favor of each taxing unit having power to tax the property, attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property. TEX. TAX CODE §32.01. Tax liens on real property take priority over nearly every other lien or claim against the property, including purchase money mortgages. See TEX. TAX CODE §32.05. Tax liens may be transferred from a taxing unit to a person authorized to pay the taxes of another pursuant to the Transfer Tax Lien Statutes. See TEX. TAX CODE §32.06.

**B. The Property and the Loan.**

10. On September 7, 2006, Erne Jackson ("Jackson") borrowed $638,350.00 from American Brokers Conduit ("ABC") to purchase the Property. The Property is more particularly described as:

> UNIT NO. 307, AND ITS APPURTENANT UNDIVIDED INTEREST IN AND TO THE GENERAL AND LIMITED COMMON ELEMENTS OF TREMONT TOWER, A CONDOMINIUM REGIME IN HARRIS COUNTY, TEXAS, ACCORDING TO THE CONDOMINIUM DECLARATION, DATED JULY 15, 2004, FILED JULY 20, 2004, RECORDED IN/UNDER FILM CODE NO. 189172 OF THE CONDOMINIUM RECORDS OF HARRIS COUNTY, TEXAS, WHEN TAKEN WITH ALL AMENDMENTS AND/OR SUPPLEMENTS THERETO.

11. On that date, Jackson executed a Deed of Trust granting Mortgage Electronic

Registration Systems, Inc., as nominee for ABC ("MERS"), a first lien security interest in the Property (the "Countrywide Deed of Trust") to secure repayment of a promissory note in the original principal amount of $510,680.00 (the "Countrywide Note").[1] The Countrywide Deed of Trust was duly recorded on October 14, 2005. Deutsche Bank acquired all right, title and interest in the Countrywide Note and Countrywide Deed of Trust (collectively the "Countrywide Loan") and, at all times relevant, was a mortgagee of the Countrywide Loan and authorized Countrywide to act as its mortgage servicer.

C.  **Nancy Groves Takes Title to the Property Subject to Plaintiffs' Lien.**

12.     The Property is a condominium located in the Tremont Tower Condominium Association (the "Condominium Association") and subject to the Declaration of Covenants, Conditions and Restrictions of the Condominium Association (the "Declaration"). Among other things, the Declaration granted the Condominium Association the power to assess maintenance expenses against condominium owners, including Jackson, and to secure repayment of those expenses through a lien and power of sale. Any such lien, however, was expressly made subordinate to a first mortgage against the Property.

13.     On August 9, 2007, Terry H. Sears ("Sears"), as trustee, executed a Trustee's Deed alleging that Jackson was in default in the payment of maintenance assessments imposed pursuant to the Declaration, that Sears was appointed to act as trustee under the Declaration and that the Property was sold at a foreclosure sale on August 7, 2007 to Texas Realty ("Texas Realty") for "[$10.00] and other good and valuable consideration" (the "Condominium Association Sale").

---

[1] Jackson also executed a purchase money note in the original principal amount of $127,670.00 (the "Second Note") and granted MERS a second lien against the Property (the "Second Deed of Trust").

**D.   Texas Realty Immediately Impresses
        Transfer Tax Lien Against Property.**

14.   Almost immediately after taking title to the Property, Texas Realty borrowed $15,568.75 from Dampkring, LLC ("Dampkring") to pay taxes assessed against the Property by the Houston ISD, Harris County, Harris County Flood Control District, Port of Houston Authority, Harris County Hospital District, Harris County Department of Education, Houston Community College System and City of Houston (collectively the "Taxing Units"). Dampkring is a limited liability company. The sole member and manager of Dampkring is Brien West ("West"). West is a childhood friend of Cowin's son, Robert P. Cowin. At the time Dampkring was established, West was headed to law school in Jacksonville, Florida. Cowin and his son, Robert P. Cowin approached West about establishing a company in his name that would be operated by the Cowins. West was paid $500.00 a month to establish and cede control of Dampkring to Cowin. All actions take by, or on behalf of, Dampkring were done either by Cowin or at his direction.

15.   Cowin is a personal friend of Allen Groves. Allen Groves either owns or operates Texas Realty. According to the Nevada Secretary of State, the managing member of Texas Realty is Lance Kerness ("Kerness"). Kerness's occupation is to serve as an officer of a corporation or a manager of a limited liability company established in Nevada for a fee. In this case, Kerness was hired by Allen Groves to act as the managing member of Texas Realty. In exchange for $25,000.00 and $1,500.00 per month, Kerness agreed to act as the managing member of Texas Realty and another limited liability company established in Nevada, Perc, LLC ("Perc"). Kerness's duties included opening a bank account, making deposits, making withdrawal, signing documents, mailing documents and money and

attending foreclosure sales in Houston, Texas each month–all at the request of Allen Groves.[2]

16. In exchange for the loan to Texas Realty, Texas Realty "agreed" to repay $15,568.75, plus $750.00 in "transfer costs and attorneys fees," and to grant a lien against the Property to secure its repayment obligations. The terms of this purported agreement are memorialized in the following documents purportedly executed by Texas Realty on August 23, 2007: (1) a Consent to Transfer of Tax Lien Pursuant to Texas Property Tax Code Section 32.06 and Contract for Foreclosure of Tax Lien purporting to authorize Dampkring to pay the outstanding ad valorem taxes due to the Harris County Tax Assessor-Collector (the "Sworn Document"); (2) an Agreement for Ad Valorem Tax Transfer promising to repay the original principal amount of $15,568.75, plus "closing costs" of $750.00, to Dampkring (the "Dampkring Agreement"); and (3) a Deed of Trust purporting to grant Dampkring a lien against the Property securing repayment of an "Ad Valorem Tax Transfer" in the amount of $15,568.75, plus $750.00 in "transfer costs and attorney fees" (the "Dampkring Deed of Trust"). The Sworn Document and the Dampkring Deed of Trust were both recorded on August 31, 2007. The Dampkring Agreement was not recorded.

17. On August 31, 2007, the Harris County Tax Assessor-Collector executed a Certification of Payment of Taxes Paid by Another Person and Transfer of Lien Under Texas Tax Code Section 32.06 (the "Certification"). The Certification was recorded on September 25, 2007.

18. The Dampkring Deed of Trust is purportedly created pursuant to the Transfer

---

[2] One instruction that Kerness never received was to make payment on any loan taken out by Texas Realty.

Tax Lien Statutes, meaning that, if true, it would superior to the Deutsche Bank Deed of Trust. The above-described agreement by and between Texas Realty and Dampkring were done without the knowledge or consent of Plaintiffs.

19. On October 1, 2007, West, at the request of Cowin and/or his son, Robert P. Cowin, executed a Transfer of Lien purporting to transfer the Dampkring Deed of Trust to Terre Development. Terre Developement is an assumed name of Robert Morrow ("Morrow"). Morrow is another personal friend of Cowin's. West is unaware of any consideration allegedly paid by Morrow for the Dampkring Deed of Trust.

E. **Foreclosure of the Dampkring Deed of Trust.**

20. Pursuant to the "agreement" between Texas Realty and Dampkring, Texas Realty was required to pay the $750.00 by September 5, 2007–or just two weeks following the execution of the Dampkring Deed of Trust–and to make regular monthly payments of principal and interest. Both the Consent and Dampkring Contract purportedly authorized Dampkring to foreclose its lien "at any time there is a default." Texas Realty did not pay a single penny on the debt secured by the Dampkring Deed of Trust.

21. On December 4, 2007–just over three (3) months after the Dampkring loan was made–, another friend of Cowin's and Allen Groves's, G.P. Matherne ("Matherne"), conducted a foreclosure sale of the Property. According to a Trustee's Deed executed by Matherne, the Property was conveyed to Infinity Capital, LLC ("Infinity") for $118,000.00. These funds were split between Terre Development, Matherne and Perc.

F. **Fraudulent Acts or Conduct.**

22. Notwithstanding the undisputable fact that both the Dampkring Deed of Trust and the foreclosure of the Dampkring Deed of Trust failed to comply with the Transfer Tax

Statutes in ways that not only render them void, but were designed to avoid detection of the fraudulent scheme,[3] Plaintiffs contend that the formation and foreclosure of the Dampkring Deed of Trust was merely a sham. That is, Plaintiffs contend that the loan agreement entered into between Texas Realty and Dampkring was entered into with the tacit understanding that Texas Realty would immediately default on her obligations, the Dampkring Deed of Trust would be foreclosed and the Property sold (thereby extinguishing Plaintiffs' interest in the Property) and the proceeds from the sale would be divided between the parties. This scheme defrauded Plaintiffs of: (1) their right to payoff, and obtain a release of, the Dampkring Deed of Trust; (2) their interest in the Property; and (3) their interest in the excess proceeds of the sale.

23.     Plaintiffs contend that Cowin was a member of a combination of two or more

---

[3] Among other deficiencies in the creation of the Dampkring Deed of Trust, Dampkring failed to comply with Section 32.065(b)(3) which required "recording of the contract in each county in which the property is located." TEX. TAX CODE §32.065(b)(3). The "contract" in this case was, or, at the very least, included, the Dampkring Contract. See TEX. TAX CODE §32.065(a) ("Section 32.06 does not abridge the right of an owner of real property to enter into a contract for the payment of taxes."); §32.065(b) (the "contract entered into under Subsection (a)...that is secured by a priority lien on the property shall provide for a power of sale and foreclosure under Chapter 51, Property Code and [each of the requirements specified in Section 32.065(b)(2)-(6)]."). It cannot be disputed that the Dampkring Contract was never recorded, thereby rendering it invalid. See *Kothmann v. Genesis Tax Loan Servs.*, 288 S.W.3d 503, 514 (Tex. App.–Amarillo pet. pending) (strictly construing recording requirements in Section 32.06, invalidated transfer tax lien which was not strictly followed).

More egregious, however, was the failure of Dampkring to comply with the Transfer Tax Lien Statutes in foreclosing the Dampkring Deed of Trust. Two (2) major deficiencies stand out, both of which were designed to prevent Plaintiffs from discovering the fraudulent scheme. First, Section 32.06(f), Plaintiffs were entitled to payoff the Dampkring Deed of Trust within six (6) months from the date the Certification was filed. The Certification was filed on September 5, 2007. Therefore, Plaintiffs should have had the right to payoff the Dampkring Deed of Trust up to March 5, 2008. By foreclosing on December 4, 2007, Plaintiffs were prevented from exercising this right. Second, while Section 32.06(c) did permit Dampkring to foreclose the Dampkring Deed of Trust non-judicially, it was first required to obtain a court order for foreclosure under Rule 736 of the Texas Rules of Civil Procedure (as modified by Section 32.06(c-1). TEX. TAX CODE §32.06(c)(2). In order to obtain such an order, Dampkring was required, among other things, to file, in a district court where the Property was located, an application naming, among others, Plaintiffs as a party, see TEX. TAX CODE §32.06(c-1)(1); TEX. R. CIV. P. 736(1), to serve Plaintiffs with the application, see TEX. R. CIV. P. 736(2) and, unless they failed to file a timely response, to serve them with at least ten (10) business days notice of hearing. See TEX. R. CIV. P. 736(6). It cannot be disputed that Dampkring did not obtain any such order or even file an application for one.

**PLAINTIFFS' ORIGINAL ADVERSARY COMPLAINT**                                                      PAGE 9

persons–ie., Cowin, Allen Groves, Texas Realty, Perc, Matherne and others–, the object of said combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means–ie., to defraud Plaintiffs of: (1) their right to payoff, and obtain a release of, the Dampkring Deed of Trust; (2) their interest in the Property; and (3) their interest in the excess proceeds of the sale–, the members had a meeting of the minds on the object of the combination or its course of action, at least one of the members committed an unlawful, overt act to further the object or course of action–ie., (1) unlawfully creating the Dampkring Deed of Trust; (2) unlawfully foreclosing the Dampkring Deed of Trust; and (3) unlawfully converting the excess proceeds from the foreclosure sale–, and Plaintiffs suffered injury as a proximate result of their wrongful acts.

V.

Causes of Action

24.   Plaintiffs re-assert and re-allege the allegations set forth in paragraphs 1 through 23, above, and, for cause of action against Cowin, respectfully show the following:

a.

First Claim for Relief: 11 U.S.C. §523(a)(2)(A)

25.   Plaintiffs contend that Cowin, individually and/or in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others have made, presented or used, or caused to be made, presented or used, the Dampkring Deed of Trust, and other documents made, presented or used ancillary thereto, and/or the trustee's deed evidencing the foreclosure of the Dampkring Deed of Trust fraudulently in violation of Chapter 12 of the Texas Civil Practice & Remedies Code. Plaintiffs contend that the Dampkring Deed of Trust, and other documents made, presented or used ancillary thereto,

and/or trustee's deed evidencing the foreclosure of the Dampkring Deed of Trust, are fraudulent, that Cowin, individually and/or in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others were aware that the Dampkring Deed of Trust, and other documents made, presented or used ancillary thereto, and/or trustee's deed evidencing the foreclosure of the Dampkring Deed of Trust were fraudulent, but that Cowin, individually and/or in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others, made, presented or used the Dampkring Deed of Trust, and other documents made, presented or used ancillary thereto, and/or trustee's deed evidencing the foreclosure of the Dampkring Deed of Trust with the intent that these documents have the same legal effect as a valid lien or claim with the intent to cause Plaintiffs financial injury. Plaintiffs contend that these actions are fraudulent and violate Chapter 12 of the Texas Civil Practice & Remedies Code and create liability to Cowin, jointly and severally with his co-conspirators, for statutory damages of up to $10,000.00, actual damages in an amount to be determined, attorneys' fees and costs of court. Plaintiffs contend that Cowin's liability for these damages are not dischargeable under 11 U.S.C. §523(a)(2)(A).

26. Pleading further, and in the alternative, Plaintiffs contend that Cowin, individually and/or in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others, created and foreclosed the Dampkring Deed of Trust in violation of the Texas Uniform Fraudulent Transfer Act, Section 24.001 *et seq.* of the Texas Business & Commerce Code (the "UFTA"). A transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the transfer is made or the obligation incurred with the actual intent to hinder, delay or defraud any creditor or without receiving a reasonably

equivalent value in exchange for the transfer or obligation. TEX. BUS. & COM. CODE §24.005(a). Plaintiffs contend that Cowin, individually and in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others, unlawfully conspired to create and foreclose the Dampkring Deed of Trust in an attempt to unlawfully extinguish Plaintiffs' interest in the Property and the excess proceeds. When both Texas Realty acquired the Property, its interest were subject to the Deutsche Bank Deed of Trust which could only lawfully be extinguished by payment. In an attempt to avoid payment to Plaintiffs, and to place the Property and/or the excess proceeds outside of the reach of Plaintiffs to satisfy the indebtedness owed to it, Cowin, through Dampkring and Terre Development, conspired with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others, to encumber the Property with the Dampkring Deed of Trust with the intention that any sums secured by such lien would never actually be repaid, but that the Dampkring Deed of Trust would be foreclosed to extinguish Plaintiffs' interest in both the Property and the excess proceeds from the sale. Plaintiffs contend that these actions are fraudulent and violate the UFTA and create liability to Cowin, jointly and severally with his co-conspirators, for actual damages in an amount to be determined, attorneys' fees and costs of court. Plaintiffs contend that Cowin's liability for these damages are not dischargeable under 11 U.S.C. §523(a)(2)(A).

II.

<u>Second Claim for Relief: 11 U.S.C. §523(a)(4)</u>

27. Pleading further, and in the alternative, Plaintiffs contend that Cowin, individually and/or in a conspiracy with Allen Groves, Texas Realty, Dampkring, Robert Morrow, Matherne and others, were larceny in violation of the Texas Theft Liability Act,

Chapter 134 of the Texas Civil Practice & Remedies Code (the "TTLA"). Plaintiffs contend that the excess proceeds from the foreclosure of the Dampkring Deed of Trust ($118,000.00, less the trustee's fee and the amount secured by the Dampkring Deed of Trust) was personal property owned by Plaintiffs, and/or to which Plaintiffs had the right to immediate possession, and over which Cowin and/or one of his co-conspirators unlawfully appropriated without the consent of Plaintiffs and Plaintiffs have sustained damages as a result. Plaintiffs contend that these actions constitute larceny in violation of the TTLA and create liability to Cowin, jointly and severally with his co-conspirators, for actual damages in an amount to be determined, attorneys' fees and costs of court. Plaintiffs contend that Cowin's liability for these damages are not dischargeable under 11 U.S.C. §523(a)(4).

## VII.

### Prayer

WHEREFORE, premises considered, Plaintiffs respectfully request that this Honorable Court enter a judgment declaring Cowin's indebtedness to Plaintiffs, in an amount to be determined, is a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A) and/or (4), granting a non-dischargeable judgment in favor of Plaintiffs against Cowin, in an amount to be determined, including, without limitation, pre- and post-judgment interest, attorneys' fees and costs and expenses and the imposition of equitable remedies to aid and assist in the enforcement of this Court's judgment.

Respectfully submitted,

/s/ Michael J. McKleroy, Jr.
Michael J. McKleroy, Jr.
State Bar No. 24000095
S.D. Tex. No. 576095
MARIS & LANIER, P.C.
1310 Premier Place
5910 N. Central Expressway
Dallas, Texas 75206
214-706-0920 telephone
214-706-0921 facsimile

ATTORNEYS FOR PLAINTIFFS

624.321\S:\ROBERT\BARRETT\Jackson (Tx Rlty)\Adversary Proceeding\Pleadings\adversary.org.wpd